UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DONALD J. HATCH, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 09-109-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| ERIC WILSON, WARDEN, | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER** |
| Respondent. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Donald Hatch is confined in the United States Penitentiary-McCreary ("USP- McCreary") located in Pine Knot, Kentucky. On April 1, 2009, Hatch filed a *pro se* Petition for writ of habeas corpus under 28 U.S.C. § 2241 [Record No. 2]. Petitioner Hatch challenges a prison disciplinary conviction, issued on August 11, 2008, which caused him to lose forty days of good-time credit [*Id*., pp. 38-41]. Hatch alleges that the Disciplinary Hearing Officer ("DHO") violated his right to due process of law guaranteed by the Fifth Amendment to the United States Constitution.

The Court screens the petition in accordance with 28 U.S.C. §2243. *See also Harper v. Thoms*, 2002 WL 31388736, at \*1 (6th Cir. 2002).[1] Under 28 U.S.C. §1915(e)(2), a district court can dismiss a case at any time if the court determines the action is frivolous or malicious, or if it fails to state a claim upon which relief can be granted. *Hilton v. Braunskill*,

---

[1] A *pro se* petition is held to lower standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in a § 2241 petition are taken as true and liberally construed in favor of the petitioner. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).

481 U.S. 770, 775 (1987). For the reasons set forth below, the Court will deny Hatch's § 2241 petition for failure to state a claim upon which relief can be granted.

**I.**

On June 4, 2008, USP-McCreary staff member L. Chaney, Special Investigative Services ("SIS") issued an "Incident Report" charging Hatch with "Use of Any Narcotic, Marijuana, Drugs, or Related Paraphernalia not Prescribed for the Individual," which is a violation of BOP Code No. 112.[2] Specifically, the Incident Report alleged as follows;

> On June 4, 2008 results were recieved [sic] from National Toxicology Laboratories indicating Urine Specimen Number BOP0000451506 tested positive for Opiates/Morphine. Records indicate urine Specimen Number B0P0000451506 was provided by inmate Hatch, Donald Register Number 11999-007 on May 30, 2008 (Random Test). Medical staff reviewed inmate Hatch's medical file and reported he has not received any medication witch [sic] would test positive for Opiates/Morphine.

[Record No. 2-3, p. 7].

Disciplinary Hearing Officer ("DHO") Raitt conducted the disciplinary hearing on August 11, 2008. The DHO issued a Report on the same date [Record No. 2-3, pp. 38- 41]. The DHO Report contains a summary of the disciplinary proceeding, to which the Court refers.

Petitioner Hatch was advised of his due process rights. The DHO report states that

---

[2] The various levels of Bureau of Prisons ("BOP") offenses are set forth in 28 C. F. R. § 541.13, Table 3. The most serious offenses ("Greatest Category") are listed in Code Nos.100-199; the next level of offenses ("High Category") are listed in Code Nos. 200- 299; the next level of offenses ("Moderate Category") are listed in Code Nos. 300-399; and the final and lowest level of offenses ("Low Moderate Category") are listed in Code Nos. 400-499.

Hatch requested staff representation, and that Ms. Kidd, Case Manager, appeared on his behalf [Record No. 2-3, p. 37]. Upon questioning by the DHO, Hatch denied that he had used non-prescribed substances and further alleged that the urine sample bottle was "never sealed in front of him and that SIS was out to get him" [*Id*., p. 38]. The DHO further wrote that "[h]e [Hatch] stated he was [sic] been urine tested several times and told it was random and feels like it is retaliation. He never took any drugs that would cause a positive reading for opiates/morphine." [*Id*.].

In Section C(2) of the Report, the DHO is asked to summarize witnesses at the hearing.[3] In the space provided for that information, the DHO wrote that Hatch requested that Officer Laridon, the officer who took the urine sample, be called as a witness. The DHO wrote that Officer Laridon did not specifically remember Hatch, but he testified that he always seals the urine test sample in the presence of the inmate [*Id*.].

Next, the DHO wrote that Hatch requested Mr. L. Chaney of the SIS to testify that he had not administered a random urine test to him on May 30, 2008. The DHO noted in the Report that Mr. Chaney was unavailable because of an extended absence. The DHO stated that Mr. Huff, Chaney's supervisor, was contacted instead and that Huff verified that Inmate Hatch had been on the list for a random urine test [*Id*.].

---

[3] It is unclear if any Roman Numeral "heading" precedes Section C(2). The DHO Report contains Roman Numeral II, identified as "**II. Staff Representative**." [Record No. 2-3, p. 37]. The next page of the DHO Report is devoted to a page-long discussion of witnesses, but there appears to be no preceding Roman Numeral heading III notifying the reader that the Report has progressed into a summary of the witnesses [*Id*., p.38]. The following page of the DHO contains Roman Numeral IV, identified as "**IV. Findings of the DHO**." [*Id*., p. 39].

The DHO then wrote that Hatch's final witness was Inmate Kelly, who testified that he did not recall Inmate Hatch being tested on the "same day."[4] [*Id.*]. The DHO wrote that Kelly's statement was that whenever his urine had been tested, the officer always sealed the bottle in his presence. According to the DHO, Inmate Kelly could not attest to the urine sample procedures for other inmates because it is done in private [*Id*].

DHO Raitt found Petitioner Hatch guilty of violating BOP Code No. 112, "Use of Any Narcotic, Marijuana, Drugs, or Related Paraphernalia not Prescribed for the Individual" [Record No. 2-3, p. 39, § IV]. In the Section of the DHO Report inquiring as to "Unavailable Witnesses," DHO Raitt marked the box next to "N/A." [*Id*., p. 39, § (4)]. The DHO then listed the other documentary evidence upon which he relied in making his findings: (1) Memorandum from L. Chaney, SIS Technician, dated 6-4-08; (2) "Chain of Custody" for sample "BOP000045551606;" (3) Lab results for sample "BOP000045551606;" (4) two written statements from Inmate Hatch; and (5) Written Statement from S. Laridon dated 7-28-2008." [*Id*., p. 38, Section D.].

In Section V of the DHO Report entitled "Specific Evidence Relied on to Support Findings," DHO Raitt wrote that he considered the written Memorandum of SIS Technician L. Chaney, who attested that on May 30, 2008, Inmate Hatch provided urine specimen # BOP 00000451506, which was submitted to the National Toxicology Laboratories for analysis.

---

[4] While the DHO's reference to "the same day" is not entirely clear, a logical interpretation might be that Inmate Kelly testified that Hatch's urine was not tested on "the same day" as his (Inmate Kelly's) urine was tested. According to the written statement of SIS technician Chaney, he collected Hatch's urine sample on May 30, 2008.

The June 4, 2008 test results indicated a positive reading for Opiates/Morphine. Mr. Chaney stated that none of Hatch's medical records contained a prescription or authorization for any medications which would have caused a positive test for Opiates/Morphine [*Id*.].

The DHO found no evidence to support Hatch's claim that Officer Laridon failed to seal the urine sample in front of him. The DHO concluded that based upon the greater weight of the evidence, Laridon had sealed Hatch's urine sample. The DHO also relied on SIS Technician Chaney's written statement concerning standard urine collection procedures and the supporting verification from Mr. Huff. Additionally, in rejecting Hatch's claim that his urine test was retaliatory and was not conducted in a random manner, the DHO relied on Mr. Huff's assertion that it would be impossible for a doctor to change the list given that a computer-generated list dictates which inmates are to be randomly tested.

The DHO also considered a written statement from Samuel Laridon, the officer who actually took Hatch's urine sample on May 30, 2008. Laridon's statement was in the form of an e-mail dated July 28, 2009 [Record No. 2-3, p. 41]. On that date, DHO Raitt had e-mailed Laridon and asked him how he had handled Hatch's urine sample on May 30, 2008 [*Id*.]. DHO Raitt explained that Hatch was claiming that Laridon had failed to seal the urine sample bottle in Hatch's presence [*Id*.]. In his reply e-mail, Laridon stated as follows:

> I am now at FCI-Sheridan in Oregon. I don't think the Bureau is going to pay to fly me back there to be a staff rep. **I don't remember doing a UA [urine analysis] on inmate Hatch, but I can tell you this, I never conducted a UA on an inmate and let him go anywhere before the sample was sealed in his presence. All UA's that I did were done in the Lt's office holding cell, sealed with the inmate present and the inmate was not allowed to leave until the results of the UA were viewable**. If the UA was positive, medical would be contacted to ensure the inmate was not on any approved medication

5

[*Id*. (emphasis added)].

The DHO rejected Hatch's claim that his UDC was not conducted in a timely manner. The DHO explained that although the Unit Disciplinary Committee ("UDC") mistakenly neglected to enter the date and time of their hearing in § 21 of the Incident Report, the UDC did in fact conduct its hearing on June 9, 2008, which was within the time limits. The DHO further noted that the UDC provided a written explanation of the oversight.

DHO Raitt imposed the following sanctions on Hatch: (1) forfeiture of forty days of Good Conduct Time; (2) loss of visitation privileges for six months; and (3) non-contact visitation only (behind glass) [*Id*., p. 40]. DHO Raitt explained that an offense of this nature warranted harsh negative consequences because such conduct

> creates potentially violent confrontations between staff and inmates, directly threatening the security of the institution. Sanctions . . . were imposed in effort to impress on you the gravity of your actions and hopefully deter you from such actions in the future.

[*Id*.].

Hatch appealed to the Mid-Atlantic BOP Regional Office. On October 30, 2008, BOP Regional Director K. M. White denied Hatch's BP-10 appeal, finding that there was sufficient evidence to support both the DHO's determination of guilt and the sanctions imposed [Record No. 7-2, p. 14]. White stated that "the decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence. The DHO found that you committed the prohibited act based on the reporting officer's statement, as adequately stated in Section V of the DHO Report." [*Id*., p. 12].

Hatch then appealed to the BOP Central Office. On February 13, 2009, Harrell Watts, the Administrator of National Inmate Appeals, denied Hatch's BP-11 appeal [*Id*., p. 14]. Watts determined that the conviction was supported by the record and that the DHO Report complied with Program Statement 5270.07, *Inmate Discipline and Special Housing Unit*.

**II.**

In his § 2241 petition, Hatch asserts five arguments in support of his claim that his Fifth Amendment right to due process of law was violated during the disciplinary hearing, which resulted in the loss of forty days of good-time credit. First, Hatch alleges that he was not provided written notice of the disciplinary hearings which he claims transpired on August 1, 2008, and August 11, 2008. Hatch alleges that on August 5, 2008, he received a form stating that a disciplinary hearing would be conducted two months earlier, on June 9, 2008. Hatch states that no disciplinary hearing transpired on June 9, 2008, and that he was not provided with advance notice of a subsequent hearing.

Second, Hatch alleges that the BOP staff refused to allow his staff representative, Jennifer Kidd, to examine the investigative documents prior to the hearing. Hatch explains that as early as May 14, 2008, two weeks before the May 30, 3008 test at issue here, he had already begun asking the SIS to provide him access to the results of all of his prior urine test results. Hatch states that on June 5, 2008, and again on June 16, 2008, he submitted requests to obtain that information under the Freedom of Information Act. On June 28, 2008, Staff Representative Jennifer Kidd informed him that SIS would not provide her with Hatch's urine surveillance records. Hatch claims that Ms. Kidd's inability to review the

7

documentation supporting the disciplinary charges impaired his defense at the hearing.

Third, Hatch alleges that the DHO violated his due process rights by refusing to allow him to call any witnesses on his behalf. Hatch alleges that the DHO gave no reason for denying his request to call witnesses. Hatch further objects to the fact that the DHO's report suggests that live witnesses were called, but that in reality, the DHO allowed no witness testimony and based his findings only on written statements.

Hatch alleges that he wanted to call three witnesses at the hearing: (1) the person who took the urine sample (Officer Laridon); (2) SIS Officer L. Chaney, who wrote the Incident Report of June 4, 2008; and (3) Inmate Kelly, Register No. 09773-040, who gave a urine sample on the same day as Hatch. Hatch objected to the DHO's consideration of these witnesses' written statements in lieu of their live testimony, arguing that he should have been allowed to cross-examine all three witnesses.

Fourth, Hatch argues that when the DHO e-mailed Officer Laridon on July 28, 2009, he stepped into the shoes of an investigator and ceased to be an impartial finder of fact. He advances the same argument with respect to DHO Raitt's pre-hearing discussion with Inmate Kelly.

Fifth, Hatch disputes that he provided any urine sample on June 4, 2008. He further challenges the validity of the "Notice of Disciplinary Hearing before the DHO" on the grounds that the UDC did not conduct a proper or timely hearing and that he did not learn of the outcome of the UDC hearing until long after it occurred.

Further, Hatch states that he wrote and delivered a Memorandum to the DHO in which he

outlined his version of the events.  Specifically, Hatch claimed that on multiple occasions over the four months preceding May 30, 2008, he had been unfairly singled out to submit to allegedly random urine tests.  He claims that SIS Chaney retaliated against him and caused him to be placed in lockdown status.  Finally, he claims that in an effort to advance the retaliation, the prison staff either switched his urine sample with someone else's after he left the room on May 30, 3008, or simply fabricated the results of his urine sample test on June 4, 2008.  Hatch complains that in reaching the guilty verdict, the DHO failed and refused to consider any of his arguments.

### III.

An inmate in a prison disciplinary proceeding is entitled to certain minimum due process protections: (1) the right to receive written notice of the charges against him at least 24 hours before his hearing; (2) the right to call witnesses and present documentary evidence, where doing so would not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-66, 94 S. Ct. 2963 (1974); *Espinoza v. Peterson*, 283 F.3d 949, 952 (8th Cir. 2002); s*ee also Allen v. Reese*, 52 Fed. Appx. 7, 8 (8th Cir. 2002) (unpublished opinion) (holding that federal prisoner's right to due process was satisfied, as he was given (i) written notice of the charges against him, (ii) the right to call witnesses, and (iii) a written report of the DHO's decision).  The requirements of due process are satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106, 47 S. Ct. 302, 71 L. Ed. 560 (1927).  A disciplinary action should be upheld if it

is supported by "some evidence." *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 2774, 86 L. Ed.2d 356 (1985). This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*.

Federal courts do not assess credibility or weigh the evidence when reviewing a disciplinary conviction. In *Superintendent v. Hill*, the Supreme Court held that:

> [a]ssuming that good time credits constitute a protected liberty interest, the revocation of such credits must be supported by some evidence in order to satisfy the minimum requirements of procedural due process . . . . [a]scertaining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.

*Id.* at 454-55. Further, a district court has no authority under the guise of due process to review a disciplinary committee's resolution of factual disputes. *Id*. at 455. A review of a decision of a prison disciplinary board does not involve a redetermination of an inmate's innocence or guilt. A district court merely ensures that a disciplinary decision is not arbitrary and does have evidentiary support. *Id.* at 457.

The record here reveals an evidentiary basis for the DHO's conclusions. DHO Raitt relied on the SIS Technician Chaney's written statement that on June 4, 2008, Hatch's urine sample came back positive for Opiates/Morphine. The DHO also had "some evidence" in the form of Huff's verification that Hatch had been on the list for random urine testing on May 30, 3008. Officer Laridon's July 28, 2008 e-mail statement regarding the standard procedure for handling bottles containing the urine specimen also constituted "some evidence" on

which to base a finding of guilt.  Finally, the DHO had the right to assign no weight to Inmate Kelly's statement, because Kelly did not observe officer Laridon handling the bottle containing Hatch's urine specimen.

Credibility determinations of hearing officers cannot be disturbed on appeal. *See Sarmiento v. Hemingway*, 93 Fed. Appx. 65, 68 (6th Cir. 2004); *Wagner v. Seely*, 915 F.2d 1575, 1576 (7th Cir. 1990) (unpublished); *Murtaugh v. Edmonson*, 815 F.2d 79 (6th Cir. 1987).  Here, DHO Raitt articulated clear, distinct evidence for finding Hatch guilty.  The DHO chose to assign no credence to Hatch's memorandum outlining his various defenses, including Hatch's assertion that he was retaliated against and that someone switched his urine sample.[5]  The DHO was vested with the discretion to disregard a verison of the events which he found to lack substance.  Even though Hatch does not agree with these findings, the decision was supported by "some evidence" in the record.  The decision will not be disturbed.

Additionally, Hatch's claim that he, or his staff representative, should have been allowed to view the video-tape of SIS Chaney administering the urine test, and/or SIS Chaney sealing of the bottle containing the urine sample, lacks merit.  Other courts have addressed claims from prisoners who have challenged a  DHO's exclusion of, or failure to

---

[5] In his supplement to the § 2241 petition, Hatch argued  that "[s]taff confused the movant by alleging that the incident took place on June 4, 2008 . . . The movant did not provide a urine sample on June 4, 2008, and knew that the claims were otherwise false." [Record No. 2-4, p. 3]. The Incident Report clearly states that "[r]ecords indicate urine Specimen Number B0P0000451506 was provided by inmate Hatch, Donald Register Number 11999-007, **on May 30, 2008** (Random Test)" [*See* Record No. 2-3, p. 7 (emphasis added)].

independently review, the video-tape of a contested incident. The Courts have concluded that the DHO's decision not to consider video-tape evidence does not constitute a denial of due process.

In *Cruzen v. Haynes*, 2007 WL 3146383 (N.D. W. Va. October 25, 2007) (Only Westlaw citation currently available), inmate Cruzen argued his Fifth Amendment right to due process of law was violated when the DHO refused to independently review a video at a disciplinary hearing instead of merely relying on a summary of the video prepared by inmate's counselor. The district court rejected that challenge, stating that due process was satisfied because there was "some evidence" to support the conviction, even without the benefit of the DHO independently watching the video tape. *Id*. at *3 (overruling prisoner's objections to Report and Recommendation of Magistrate Judge). *See also Hadden v. Mukasey*, 2008 WL 2332344 (S.D.N.Y. June 3, 2008) (Only Westlaw citation currently available) ("some evidence" requirement of *Superintendent v. Hill* was supported by DHO's reliance on the report and summary of disputed incident prepared by the inmate's counselor; as surveillance videotape was not offered as evidence against the inmate, the DHO did not violate the inmate's Fifth Amendment rights by refusing to independently review the video); and *Landry v. Adams*, 2007 WL 869224 (E.D. Va. March 19, 2007) (Only Westlaw citation currently available) ("The record further demonstrates that the evidence presented by the investigating officer to the DHO was sufficient to support the punishment petitioner received. As such, petitioner's due process rights were not violated by the absence of additional evidence in the form of video surveillance footage.").

Further, the DHO's reliance on written statements, and his denial of Hatch's request to call three witnesses, was reasonable. A prisoner does not have a constitutional right to confront and cross examine witnesses in a disciplinary hearing. *Wolff*, 418 U.S. at 567; *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993).[6] A prisoner's right to call witnesses and present evidence at a disciplinary hearing is circumscribed by competing concerns for institutional safety and other correctional goals. *See Ponte v. Real*, 471 U.S. 491, 495 (1985); *Wolff v. McDonnell*, 418 U.S. at 566; *see also Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976) (a prisoner's right to confront and cross-examine adverse witnesses in a disciplinary hearing is generally more limited than the right to call friendly witnesses, but similar interest balancing may be applied); *Smith v. Massachusetts Dep't of Correction*, 936 F.2d 1390, 1399 (1st Cir. 1991) (same).

A DHO has the authority, consistent with a prisoner's due process rights, to refuse to call witnesses whose testimony he or she believes will be cumulative to other evidence or

---

[6]

In *Wolff*, the Supreme Court explained that a disciplinary proceeding does not implicate the full panoply of rights due a defendant in a criminal proceeding, such as the absolute right to cross-examine a witness:

> If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls. Proceedings would inevitably be longer and tend to unmanageability. These procedures are essential in criminal trials where the accused, if found guilty, may be subjected to the most serious deprivations, or where a person may lose his job in society. But they are not rights universally applicable to all hearings. Rules of procedure may be shaped by consideration of the risks of error, and should also be shaped by the consequences which will follow their adoption.

*Wolff*, 418 U.S. at 466 (internal citations omitted).

simply irrelevant to determining the inmate's guilt of the charge. *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999). The presence of witnesses at the hearing may be refused when it creates an undue risk of reprisal or harassment, undermines authority, or otherwise creates undue burdens on the safe administration of the prison. *Ponte*, 471 U.S. at 495; *Wolff*, 418 U.S. at 566; *see also Ramer v. Kerby*, 936 F.2d 1102, 1104 (10th Cir. 1991) ("[L]egitimate penological concerns include, but [are] not limited to, safety or correctional goals, expense, staffing requirements ... and the danger of harassment.").

When challenged, prison administrators bear the burden of showing that the reasons for the denial were not arbitrary. *Ponte*, 471 U.S. at 497. They may make their reasons known at the time of the disciplinary action or wait until the prisoner brings a legal action. *Ponte*, 471 U.S. at 497; *Smith*, 936 F.2d at 1399-1400.

The district court's role is not to substitute its judgment for that of the prison officials charged with conducting the disciplinary hearing, but to determine whether the proof offered to explain the refusal to call these witnesses satisfactorily carries defendants' burden of showing that the decision was not arbitrary. *Ponte*, 471 U.S. at 497-99; *see also Freeman v. Rideout*, 808 F.2d 949, 955 (2d Cir. 1986) (same), *cert. denied*, 485 U.S. 982 (1988).

In this case, Officer Laridon is employed at FCI-Sheridan, a BOP prison in Oregon. As he accurately noted, it is unlikely, if not totally improbable, that the BOP would be expected to call him away from his duties at FCI-Sheridan and incur the burden and expense of transporting him back to USP-McCreary to testify at a disciplinary hearing.

Hatch has attached a passage from BOP Program Statement ("PS") 5270.07 which

pertains to witnesses at DHO hearings. The PS stated in relevant part at Chapter 7, page 3:

> **The DHO need not call repetitive witnesses. The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO**. The DHO shall request submission of written statements from unavailable witnesses who have information directly relevant to the charge(s). The DHO shall document reasons for declining to call requested witnesses in the DHO report, or, if the reasons are confidential, in a separate report, not available to the inmate. **The inmate's staff representative, or when the inmate waives staff representation, the DHO, shall question witnesses requested by the inmate who are called before the DHO.**

[Record No. 2-3, p. 26 (emphasis in original)]. Clearly, PS 5270.07 states that a witness need not be called if his or her knowledge is set forth in the Incident Report or "other investigative materials supplied to the DHO." In this case, Officer Samuel Laridon's July 28, 2008 e-mail, in which he provided his knowledge of the taking of Hatch's urine sample, constitutes "other investigative materials supplied to the DHO."

Hatch also complains that he was unable to cross examine SIS Technician Chaney. The DHO explained that because Chaney was unavailable to testify due to an extended absence, his written statement would be considered, along with the supplemental information supplied by Chaney's supervisor, Mr. Huff. That explanation was logically related to institutional goals and clearly satisfies the due process requirements outlined in the cases. *See Ponte*, 471 U.S. at 497 ("[S]o long as the reasons are logically related to preventing undue hazards ... the explanation should meet the due process requirements as outlined in *Wolff*."). Again, the Court refers to the provision in PS 5270.07 that specifies that an adverse witness need not be called if his or her knowledge of the incident can be adequately

summarized in "other investigative materials supplied to the DHO."

Hatch does not offer a particularized explanation of how the absence of these witnesses prejudiced his defense. *Alkhalidi v. Davis*, 2004 WL 260279, at *3 (7th Cir. 2004). Hatch's Staff Representative reviewed both Laridon's and Chaney's written statements during the hearing, and the substance of those statements merely reinforced that which Hatch already knew from the charges filed against him. A disciplinary proceeding involving the revocation of good time credits is not comparable to a criminal conviction, *Wolff v. McDonnell*, 418 U.S. at 556.

Finally, the exclusion of Inmate Kelly as a witness was not an abuse of discretion. As noted previously, Inmate Kelly had no knowledge of the events surrounding the handling of Hatch's urine sample bottle. Kelly's only contribution was that whenever *he* had been tested, the officer always sealed the bottle in front of him.

The Court agrees with Hatch that the DHO could have, and should have, specifically noted in his Report that Laridon and Inmate Kelly were unavailable. At first blush, the DHO Report does read as though Officer Laridon, Mr. Huff and Inmate Kelly all testified in person. The DHO failed to mark the correct box on the DHO Report which would have signified that certain witnesses were in fact "unavailable." The DHO clearly noted in the Report that SIS Technician Chaney was unavailable and that he was therefore relying on Chaney's written statement, but he failed to make it clear that Laridon, Huff and Kelly either were unavailable or did not testify. While the DHO properly listed the written statements of Officer Laridon and Inmate Kelly as "other" evidence upon which he relied, the DHO did

16

not make it clear that he relied *solely* on written statements provided by Laridon, Inmate Kelly, and, possibly, Mr. Huff.[7]

Even if the Court were to conclude that the DHO's actions were incorrect either in preparing the DHO Report or in refusing to call live witnesses, such errors are not of constitutional magnitude under the facts of this case. *Howard v. Bureau of Prisons*, 487 F.3d 808, 813 (10th Cir. 2007). Errors made by prison officials in denying witness testimony at disciplinary hearings are subject to harmless error review. *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006); *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Brown v. Braxton*, 373 F.3d 501, 508 (4th Cir. 2004); *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991).

In this case, Hatch does not indicate what questions he, or more appropriately his staff representative, would have asked the three witnesses that would have discernibly impacted the outcome of the proceedings.[8] According to BOP PS 5270.07, an inmate's questions are to be submitted in writing to the DHO, whereupon *the DHO* questions the witness. The PS

---

[7] The DHO stated that "Mr. Huff, Mr. Chaney's supervisor was contacted and verified that inmate Hatch was on the random list for the U/A in question." [Record No. 2-3, p. 38]. It is unclear from the DHO Report whether Mr. Huff's statements were written or verbal. In the section where the DHO listed "other documentary evidence" upon which he relied in making his findings, the DHO did not include a written statement *from Mr. Huff*.

[8] Hatch specifically requested a staff representative to represent him during the DHO hearing. As a threshold matter, when an inmate chooses to have a staff member represent him at a disciplinary hearing, that representation is in lieu of, rather than in addition to, the prisoner representing himself at the hearing. Having chosen to have a staff member represent him at the hearing, Hatch could not thereafter choose to play the role of advocate. This rule is codified in the BOP's administrative regulations. 28 C.F.R. § 542.17; Program Statement 5270.07 § 7, pgs. 2-4 (1987).

specifically states that "the inmate may not question any witness at the hearing." [Record No. 2-3, p. 26]. Hatch offers nothing more than conclusory assertions that the DHO's actions prejudiced his ability to present a defense.

In light of these facts, the Court cannot conclude either that the exclusion was improper in light of the totality of the evidence or that Hatch suffered clearly demonstrable prejudice as a result of the exclusion. *See Grossman v. Bruce*, 447 F.3d at 805 (10th Cir. 2006) (prisoner's failure to demonstrate prejudice by erroneous exclusion of witness testimony at disciplinary hearing passes muster under harmless error review).

Hatch contends that he and his staff representative were denied an opportunity to review the BOP's incriminating evidence and documents prior to the hearing. Hatch again confuses the minimum due process procedures required in a prison disciplinary proceeding with the broader due process requirements required in a criminal proceeding. There is no requirement that prison staff afford an inmate charged with a disciplinary infraction access to incriminating documents or "discovery" prior to the hearing. *See Wolff v. McDonnell*, 418 U.S. at 563-66.

Hatch alleges that the prison staff failed to provide him with timely and adequate notice of the disciplinary hearing which was conducted on August 11, 2008. Hatch also challenges the fact that he did not receive the decision of the UDC until August 5, 2008, just days before the DHO hearing took place. Specifically, Hatch points to the fact that the "Notice of Discipline Hearing Before the (DHO)" [Record No. 2-3, p. 8] indicated that the DHO hearing was to transpire on June 9, 2008, when in fact the hearing did not transpire

until over two months later, on August 11, 2008.

As the DHO explained in his report, the UDC acknowledged that it had initially failed to specify the date and time of its decision in line number 21 of the June 4, 2008 Incident Report [*See* original "Incident Report," Record No. 2-3, p. 7]. A representative from the UDC thereafter addressed that omission in a handwritten notation at the bottom of the Incident Report stating that it had conducted its hearing on June 9, 2008, at 3:00 p.m., and that Hatch had been provided with a copy of the revised Incident Report on August 5, 2008 [*See* revised "Incident Report," p. 6]. The revised Incident Report contained the date and time of the UDC's June 9, 2008 decision to refer the matter to the DHO since the UDC lacked authority to impose the authorized sanctions in the event the prisoner is found guilty.

The DHO correctly noted that although Hatch belatedly received the UDC's decision, no prejudice occurred because Hatch still received notice of the charges 24 hours before the DHO hearing, which is all that *Wolff* requires. It is disingenuous for Hatch to argue that the charges against him somehow took him by surprise, or that the lack of adequate notice of charges deprived him of an opportunity to defend himself. Hatch stated in the supplement to his § 2241 petition that in June of 2008, almost two months prior to the August 11, 2008 disciplinary-hearing, he wrote the BOP "seeking information to be used in defending against the allegations in the incident report of June 4, 2008." Clearly, Hatch knew well in advance of the August 11, 2008 hearing that he was facing disciplinary charges on the issue.

In summary, Hatch has not established that the DHO violated his Fifth Amendment right to due process of law. Hatch's conviction and loss of forty days of good time credit will

stand.

### IV.

Accordingly, **IT IS ORDERED** as follows:

(1) Petitioner Donald J. Hatch's Fifth Amendment due process claims stemming from his conviction for violating BOP Code No. 112, "Use of Any Narcotic, Marijuana, Drugs, or Related Paraphernalia not Prescribed for the Individual," are **DISMISSED WITH PREJUDICE**.

(2) Petitioner Donald J. Hatch's Petition for Writ of Habeas Corpus [Record No. 2] is **DENIED**.

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named respondent.

This the 3rd day of September, 2009.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge